**In the Interest of BABY GIRL T, a Minor Child.**

**No. 2–84–027–CV.**

Court of Appeals of Texas, Fort Worth.

May 3, 1984.

Blasingame & Osborn, and Joe A. Byrom, Dallas, for appellant.

Krause & Wells, and Sarraine S. Krause, Hurst, Law Offices of G. Stanley Cramb and G. Stanley Cramb, Bedford, for intervenors.

Before JORDAN, ASHWORTH and HILL, JJ.

## OPINION

JORDAN, Justice.

This is a parental rights termination case in which the real parties in interest are an infant girl, her natural mother, and a licensed adoption agency. The parties will be referred to in this opinion as Baby Girl T, appellant (the natural mother), and Catholic Social Service, appellee, or the agency. The appeal is from a decree terminating the parental rights of both the natural mother, appellant herein, and the alleged father of the child, pursuant to the petition of Catholic Social Service. The petition was based on appellant's executed "Mother's Affidavit of Relinquishment of Parental Rights to Catholic Social Service" which

included a waiver of citation in the suit to be brought terminating her parental rights. The alleged natural father was served with citation, and made no appearance at any time, nor did he in any way object to the suit to terminate his parental rights. He is not involved in the appeal.

In May of 1983, appellant, unmarried and pregnant, went to Catholic Social Service and talked to Mrs. Margie Peterson, a social worker with that agency, about her pregnancy, and shortly thereafter started counseling in the maternity program offered by Catholic Social Service. This program purportedly dealt with the problems of unwed mothers and whether they should retain custody and possession of their babies or place them for adoption, although appellant insists the whole program dwelt on the benefits of adoption and the detriments in keeping the child.

On August 4, 1983 Catholic Social Service filed its petition for termination of the parent-child relationship between Baby Girl T and her parents. Baby Girl T was born on November 5, 1983. On the morning of November 8, 1983, shortly before she left the hospital, appellant signed an irrevocable Affidavit of Relinquishment of Parental Rights, before two witnesses and a notary public. In the hospital room with appellant at the time she signed the relinquishment affidavit were her mother and Mrs. Peterson, the social worker for the agency. Later that morning, November 8, 1983, *less than five days after the birth of the child,* a termination hearing was held, with Marjorie Peterson as the only witness. The court entered a decree terminating the rights of both parents, finding that appellant had executed an irrevocable Affidavit of Relinquishment of Parental Rights, that termination of the parent-child relationship would be in the best interest of the child, and appointing Catholic Social Service as the Managing Conservator of the child. The order also authorized the Managing Conservator to place the child for adoption, which was accomplished later that same week. The child is currently with the adoptive parents.

On November 14, 1983, appellant contacted Mrs. Peterson, told her she had changed her mind about adoption of her baby and asked that the child be returned to her. Upon being advised that this could not be done, appellant, through her attorney, then filed on November 14, 1983, her Motion to Set Aside Judgment and Grant a New Trial. On January 11, 1984, after a full evidentiary hearing, the court signed an Order Granting Partial New Trial, which revoked the November 8, 1983 parental rights termination order as to appellant only.

On January 17, 1984, Catholic Social Service (the Agency) filed its Motion to Vacate Order Granting Partial New Trial and Reinstating Original Judgment. On January 20, 1984, after hearing arguments of counsel, and without taking further testimony, the court signed an Order Vacating Order Granting Partial New Trial and reinstating the November 8, 1983 Decree of Termination of Parental Rights. On February 2, 1984, appellant filed a Motion to Vacate Order Vacating Order Granting Partial New Trial and on February 8, 1984, filed an Amended Motion to Vacate Order and to Grant New Trial. On February 10, 1984, a hearing was held on this amended motion, after which the court entered its order denying new trial. This appeal followed.

We reverse and remand.

Although there are eight points of error raised by appellant in her brief, our ruling on the first point is dispositive of the appeal and discussion of the remaining points is unnecessary.

In her first point of error appellant maintains that the trial court erred in entering the order of termination of parental rights within five days of the birth of the child. We agree and sustain this point.

TEX.FAM.CODE ANN. sec. 15.021 (Vernon Supp.1984), provides in part as follows:

A petition in a suit affecting the parent-child relationship which requests the termination of the parent-child relationship with respect to either or both parents *may* be filed before the birth of the child and after the first trimester of the moth-

er's pregnancy. *If the petition is filed before the birth of the child, no hearing on the termination may be held nor may orders other than temporary orders be issued until the child is at least five days old....* (Emphasis added.)

Baby Girl T was born on November 5, 1983. The relinquishment affidavit was signed on the morning of November 8, 1983, and the Termination of Parental Rights Order was signed by the trial court on the same morning, at a time when the child was only four days old. These facts raise the question of the effect of the November 8, 1983 order terminating appellant's parental rights to her daughter. Was it a valid order or not? We hold, for the reasons stated, that it was a void judgment which must be set aside.

Appellant maintains that the language of sec. 15.021, above quoted, is mandatory and that any order entered in violation thereof, within five days of the birth of the child, is totally void. Catholic Social Service, on the other hand, argues that the language of this section is merely directory and that the judgment of November 8, 1983 is perfectly valid. The agency stresses what it terms the permissive language contained in sec. 15.021, the theory apparently being that since that section says no hearing *may* be held nor *may* orders other than temporary orders be issued until the child is at least five days old, that this is only directory or permissive in nature, and not mandatory. We disagree.

Appellee agency says that the use of the word "may" instead of the word "shall" is usually construed to be permissive or directory in nature. We need not get into semantics and concern ourselves with whether "may", "shall", or "must" was used in this section; the clear meaning of sec. 15.-021 is that no hearing is to be held nor permanent orders terminating parental rights issued within five days of the birth of the child. The words used are clearly prohibitive and preclude such action by the court.

One purpose of this language, apparently, is to protect the rights of the putative father and give him time to learn of the birth and assert his parental rights. While the father defaulted in this case, we do not think that affects the meaning or the purpose of the clear wording of the section.

■ We hold the judgment in this case is void, not because the court lacked jurisdiction of the parties or of the subject matter, because it did not lack such jurisdiction; it is void because it was rendered contrary to a valid statutory prohibition and was therefore outside statutory authority. *Freeman v. Freeman*, 160 Tex. 148, 327 S.W.2d 428 (1959); *Kessler v. Texas Employers' Insurance Association*, 421 S.W.2d 133 (Tex.Civ. App.—Eastland 1967, writ ref'd, n.r.e.).

■ When a judgment is granted in contravention of a mandatory statutory provision it is a void judgment. *See Gayle v. Alexander*, 75 S.W.2d 706 (Tex.Civ.App.—Waco 1934, no writ), where it was said:

A mandatory provision in a statute is one, the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one, the observance of which is not necessary to the validity of the proceeding ....

*See also Freeman v. Freeman, supra; State Board of Insurance v. Betts*, 158 Tex. 612, 315 S.W.2d 279 (1958); *Kessler v. Texas Employers' Insurance Association, supra.*

In *Freeman, supra,* the trial court, in a will contest case, granted a default judgment against the proponent of the will in violation of TEX.R.CIV.P. 330(b), which provided for the setting and notification of all contested cases on the court's docket. The Supreme Court held that the default judgment was void. The court said that ordinarily a judgment rendered by a legally constituted and organized court having jurisdiction over the subject matter of and the parties to a suit will be held valid, unless the particular judgment is one which the court had no power to render. The court in *Freeman* also said:

Judgments are void for lack of power in courts to render them when they are

rendered contrary to constitutional or valid statutory prohibition or outside limiting constitutional or statutory authority ... (Authorities omitted.) They are not void when rendered in violation of statutory provision which is merely directory. (Authorities omitted.) *Freeman, supra,* 160 Tex. 148, 327 S.W.2d 428, at 433.

In *State Board of Insurance v. Betts, supra,* a trial judge appointed as a receiver in an insurance company liquidation case, a person other than the one designated as liquidator by the insurance commissioner, as required by an article of the Insurance Code of the State of Texas. The Supreme Court held such appointment absolutely void because it contravened a mandatory provision of the Code. The court said, 158 Tex. 612, 315 S.W.2d 279, at page 280:

> It is a generally accepted premise that the failure of a court to observe a mandatory statutory provision conferring a right or forbidding particular action will render its order or judgment void. *Cline v. Niblo,* 117 Tex. 474, 8 S.W.2d 633 (1928).

The court in *Betts* also used language which we think is particularly applicable to the case before us:

> The problem of statutory construction is to ascertain the intent of the Legislature. When we abandon the plain meaning of words, statutory construction rests upon insecure and obscure foundations at best. It should perhaps be reiterated that Courts have no concern with the wisdom of legislative acts, but it is our plain duty to give effect to the stated purpose or plan of the Legislature, although to us it may seem ill advised or impracticable. (Citations omitted.) *Betts,* 158 Tex. 612, 315 S.W.2d 279, *supra,* at 281.

Therefore, by virtue of the authorities cited above, we hold that sec. 15.021 of the Family Code is mandatory or prohibitive in nature and that the failure of the trial court to properly observe the mandate of that section rendered its November 8, 1983 judgment of termination of parental rights void. The judgment is accordingly reversed and the cause remanded to the trial court for further proceedings, not inconsistent with this opinion.

We reverse and remand.